IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MELODY G. CHANDLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-2935-S-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 21.

Defendant United States of America has filed a Motion to Dismiss Plaintiff's Complaint for Lack of Subject-Matter Jurisdiction. *See* Dkt. No. 23 ("the Motion to Dismiss"). Plaintiff Melody G. Chandler failed to file a written response to the Motion to Dismiss, and her time to do so has passed. *See* Dkt. No. 24.

Ms. Chandler instead filed a Motion to Change Venue and to Amend Complaint. *See* Dkt. No. 25. The United States filed a response to the motion, *see* Dkt. No. 33, however, Ms. Chandler has not filed a reply, and her time to do so has passed, *see* Dkt. No. 27.

Ms. Chandler has also filed a Motion for Summary Judgment [Dkt. No. 32], seeking summary judgment in her favor as to the issue of whether she qualified as an

innocent spouse within the meaning of 26 U.S.C. § 6015(f). The United States has filed a response, asserting that, for the reasons explained in the Motion to Dismiss, *see* Dkt. No. 35, "this Court lacks subject-matter jurisdiction to consider the merits of Plaintiff's section 6015 innocent spouse claim" and so "should deny Plaintiff's motion for summary judgment, and dismiss this case for lack of subject-matter jurisdiction," *id.* at 1. "Alternatively, if the Court does not dismiss this case, the United States requests that pursuant to Rule 56(d), the deadline to file a response to the merits of Plaintiff's section 6015 innocent spouse claim be set for at least 30 days after the close of discovery." *Id.* at 1 (footnote omitted). Again, Ms. Chandler has not filed a reply.

The undersigned recommends that the Court grant United States's Motion to Dismiss Plaintiff's Complaint for Lack of Subject-Matter Jurisdiction [Dkt. No. 23], deny Plaintiff Melody G. Chandler's Motion to Amend Complaint [Dkt. No. 25], and dismiss Plaintiff Melody G. Chandler's action without prejudice for lack of subject-matter jurisdiction and without reaching her Motion to Change Venue [Dkt. No. 25] or Motion for Summary Judgment [Dkt. No. 32].

## Background

In October 2011, Ms. Chandler sent Form 8857 to the Internal Revenue Service ("IRS"), as a Request for Innocent Spouse Relief (her "Request"). Ms. Chandler requested relief for the years of 1997 to 2002. *See* Dkt. No. 23, Ex. 1-A at App. 9. In her Request, Ms. Chandler claimed that she did not know that her ex-husband had filed tax returns during those years with incomplete or missing information. *See id.* at App. 9. Ms. Chandler further argued that their taxes were prepared by a professional

accounting firm, that her money was not co-mingled with her ex-husband's, and that she was simply "handed a thick pile of paper each year and told to sign the box." *Id.* at App. 8.

The IRS received these forms on November 29, 2011, and ultimately denied Ms. Chandler's Request on December 24, 2012. *See* Dkt. No. 23, Ex. 1-B at App. 15. The IRS explained that it denied Ms. Chandler's claim because she failed to show that it was unfair to hold her responsible where she (1) did not prove that she had reason to believe the taxes would be paid at the time she signed the return, and (2) proffered documents that did not show an economic hardship. *See id.* The IRS specifically stated in its response that, if Ms. Chandler disagreed with its decision, she could file a petition with the United States Tax Court ("Tax Court") to review the denial. *See id.* The letter warned that any appeal must be made within 90 days from the date of denial notification. *See id.*

Ms. Chandler failed to submit an appeal. Instead, after the 90-day window, she filed another Form 8857 with the IRS on September 23, 2012, requesting tax relief for the same years that the IRS had previously denied. *See* Dkt. No. 23, Ex. 1-C at App. 19. Although the IRS received Ms. Chandler's request after the 90 days had elapsed, it considered the new Form 8857 a request for reconsideration and again denied relief. *See* Dkt. No. 23, Ex. 1-D at App. 24. Ms. Chandler's attorney went on to file three similar submissions in February, May, and August of 2014, each of which the IRS denied for the lack of any new information. *See* Dkt. No. 23, Ex. 1-E at App. 26.

In June 2013, the IRS sent Ms. Chandler a Notice of Levy on Wages, Salary, and Other Income. In response, Ms. Chandler filed a Collection Appeal Request through the IRS's Collection Appeals Program. *See* Dkt. No. 23, Ex. 1 at App. 2. However, the IRS upheld the levy. *See* Dkt. No. 23, Ex. 1-J at App. 37.

From 2014 through 2015, the IRS levied $22,890 in proceeds and applied this money to Ms. Chandler's tax liabilities for 2001 and 2002. *See* Dkt. No. 23, Ex. 1 at App. 3. But, in May 2015, the IRS wrote off $61,009.67 of Ms. Chandler's federal income tax liabilities for 2001 and $51,381.31 for 2002 because the collection statute of limitations had run. *See id.*

In July of 2015, Ms. Chandler filed a Claim for Refund form, requesting a refund based upon her innocent spouse relief claim. *See* Dkt. No. 23, Ex. 1-H at App. 34. The IRS initially refused the claim as untimely but eventually considered its merits and denied it. *See* Dkt. No. 23, Ex. 1-I at App. 35. Once more, Ms. Chandler filed a Collection Appeals Request to appeal the denial. *See* Dkt. No. 23, Ex. 1-J at App. 37. But, in 2017, the IRS informed Ms. Chandler that IRS Appeals decided to sustain the disallowance of her refund request and that IRS Appeals did not have the authority to address the issue of innocent spouse relief because she failed to petition the Tax Court after that claim was denied several years prior. *See id.*

Ms. Chandler then filed this lawsuit. *See* Dkt. No. 1. She contends that she is entitled to a refund of $32,929 based on innocent spouse relief. *Id.*

-4-

## Legal Standards

### I.    <u>Subject-Matter Jurisdiction</u>

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject-matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof

that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The United States Court of Appeals for the Fifth Circuit recognizes a distinction between a "facial" attack to subject-matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming*, 281 F.3d at 161 ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

On a factual attack, however, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial

court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523. "When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome. In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case." *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 319 (5th Cir. 2012) (footnotes omitted). But "an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court." *Id.* at 319-20 (footnote omitted).

## II.    Amendment of Complaint

Because the standards by which the Court evaluates a motion for leave to amend the pleadings vary according to whether the motion was filed before or after the deadline established in the scheduling order, the court must determine, as an initial matter, whether the motion was filed before or after the deadline. *See, e.g.*, *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-cv-08700-D & 3:10-cv-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sept. 21, 2011) ("Motions for leave to amend are typically governed by Rule 15(a)(2), or, if the time to seek leave to amend has expired, by Rule 16(b)(4) and then by Rule 15(a)(2).").

When the deadline for seeking leave to amend pleadings has expired, the Court must first determine whether to modify the scheduling order under the Federal Rules of Civil Procedure 16(b)(4) good cause standard. *See S&W Enters., L.L.C. v. SouthTrust*

*Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). To meet the good cause standard, the party must show that, despite her diligence, she could not reasonably have met the scheduling order deadline. *See id.* at 535. The Court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "'(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 536 (quoting *Reliance Ins. Co. v. La. Land & Exploration Co.,* 110 F.3d 253, 257 (5th Cir. 1997)). If the movant satisfies Rule 16(b)(4)'s requirements, the Court must then determine whether to grant leave to amend under the Federal Rules of Civil Procedure 15(a)(2)'s more liberal standard, which provides that "[t]he [C]ourt should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); *see S&W Enters.*, 315 F.3d at 536.

When the party is not subject to an expired deadline for seeking leave to amend, Rule 15(a) requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). Leave to amend is not automatic, *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005), but the federal rules' policy "is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). The Court "may consider a variety of factors" when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994. But Rule 15(a) provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), and the Court must do so "unless there is a substantial reason to deny leave to amend." *Dussouy*, 660 F.2d at 598; *accord Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) ("leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile").

The Fifth Circuit has interpreted "futility" in the context of Rule 15 to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). That is, "a district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 208 (5th Cir. 2009) (internal quotation marks omitted)). And courts may deny leave to amend when a "proposed amended complaint does not resolve the issues of subject-matter jurisdiction." *Avdeef v. Royal Bank of Scotland, PLC*, No. 4:13-cv-967-O. 2014 WL 4055369, at *5 (N.D. Tex. Aug. 15, 2014); *accord Briggs v. Miss.*, 331 F.3d 499, 508 n.9 (5th Cir. 2003); *see generally Simmons v. Sabine River Auth. La.*, 732 F.3d

469, 478 (5th Cir. 2013) ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given." (internal quotation marks omitted)).

III.    Transfer of Venue

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A plaintiff's original choice of forum is ordinarily entitled to some deference. *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). This means that the moving party must "demonstrate[] that the transferee venue is clearly more convenient." *Id.* But, while a plaintiff's choice of forum "should be respected" unless "the transferee venue is clearly more convenient," the plaintiff's "choice of forum . . . is not an independent factor within . . . the § 1404(a) analysis." *Id.* at 314 n.10, 315 (internal quotation marks omitted). Rather, "a plaintiff's choice of venue is to be treated as a burden of proof question." *Id.* at 314 n.10 (internal quotation marks omitted).

In applying Section 1404(a), the Fifth Circuit directs courts to first determine "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once this determination is made,

> [the Court] turn[s] to the language of § 1404(a), which speaks to the issue of "the convenience of the parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public factors, none of which [is] given dispositive

weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* (citations omitted).

Transfer of venue under Section 1404(a) is at the Court's discretion, considering "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *El Chico Restaurant. Ca Texas, Inc. v. Carroll*, No. 3:09-cv-2294-L, 2010 WL 2652286, at *2 (N.D. Tex. June 29, 2010) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

## Analysis

I.   <u>The United States's Motion to Dismiss</u>

The United States seeks dismissal of Ms. Chandler's complaint for lack of subject-matter jurisdiction, contending that the United States Tax Court holds exclusive jurisdiction to review denials of innocent spouse relief. *See* Dkt. No. 23 at 6-10.

The Court should look to 26 U.S.C. § 6015 – and the case law that interprets Section 6015 – to provide the statutory framework for innocent spouse relief.

"[T]he innocent spouse exemption, codified at 26 U.S.C. § 6015, 'was . . . developed in an effort to offer some protection to a spouse who, through no fault of their

own, did not have any knowledge of the incorrect tax reporting of the other spouse.'" *United States v. Boynton*, No. 05-cv-2243, 2007 WL 737725, at *2 (S.D. Cal. Feb. 2, 2007) (citing *In re French*, 242 B.R. 369, 376 (Bankr. N.D. Ohio 1999)). "Under [Section] 6015's 'catch-all' provision, the 'Commissioner may grant a spouse relief from joint and several liability . . . where it [would be] inequitable to hold the requesting spouse liable.'" *United States v. Stein*, No. 3:13-cv-743, 2015 WL 5943441, at *3 (W.D. Ky. Oct. 13, 2015) (internal citations and quotations omitted).

To seek relief as an innocent spouse, the party must file Form 8857 with the IRS. *See* 26 C.F.R. § 1.6015-5(b). The Secretary of the Treasury then decides whether to grant or deny equitable relief and issues the party a decision letter. *See* 26 U.S.C. § 6015(f); 26 C.F.R. § 1.6015-4(a) ("The Internal Revenue Service has the discretion to grant equitable relief from joint and several liability to a requesting spouse when, considering all of the facts and circumstances, it would be inequitable to hold the requesting spouse jointly and severally liable."). If unsatisfied with the Secretary's decision, or if the Secretary fails to give notice of a decision within six months after receiving the request for review, the requesting spouse may petition the Tax Court to review the decision, "[i]n addition to any other remedy provided by law." 26 U.S.C. § 6015(e)(1)(A). If the Tax Court upholds the denial of the request, the United States Courts of Appeals then have exclusive jurisdiction to review the Tax Court's decision. *See* 26 U.S.C. § 7482(a)(1); *Stein*, 2015 WL 5943441, at *3; *Boynton*, 2007 WL 737725, at *3.

As to the exclusivity of the Tax Court's jurisdiction, "[a]lthough the statute itself does not address whether the Tax Court's jurisdiction is exclusive, courts interpreting the statute have concluded that it is." *United States v. Elman*, No. 10-CV-6369, 2012 WL 6055782, at *3 (N.D. Ill. Dec. 6, 2012); *accord Boynton*, 2007 WL 737725, at *3-*4. Courts have also held that "district court[s] [have] jurisdiction to decide an innocent spouse issue only when the taxpayer files a refund suit in the district court while a [Section] 6015 petition is pending with the Tax Court." *United States v. LeBeau*, No. 10CV817, 2012 WL 835160, at *3 (S.D. Cal. Mar. 12, 2012); *see also Andrews v. United States*, 69 F. Supp. 2d 972, 978 (N.D. Ohio Feb.24, 1999) (holding that district courts lack jurisdiction to reevaluate a tax payer's innocent spouse claim). "In other words, Congress' statutory scheme envisions the Secretary and the Tax Court deciding questions about the exemption in all but the rarest circumstances. Certainly no part of [Section] 6015 confers jurisdiction to the federal district courts 'to determine innocent spouse claims in the first instance.'" *Stein*, 2015 WL 5943441, at *3 (quoting *United States v. Wallace*, No. 1:09-CV-87, 2010 WL 2302377, at *4 (S.D. Ohio Apr. 28, 2010)).

Here, Ms. Chandler appropriately filed Form 8857 with the IRS. *See* Dkt. No. 23, Ex. 1-A at App. 7. But, after review, the Secretary denied Ms. Chandler's request for innocent spouse relief and sent her a Final Determination letter informing her of the remedy that she should pursue if she sought to appeal the decision. *See* Dkt. No. 23, Ex. 1-B at App. 15. Under Section 6015, Ms. Chandler was to petition the Tax

Court within 90 days of the date of the Final Determination letter. *See id.* She failed to do so and instead repeatedly requested administrative reconsideration of the denial of her claim. *See* Dkt. No. 23, Exs. 1-A to 1-J.

Her efforts have led to this claim before the Court which – based on the authority laid out above persuasively interpreting the governing statutory scheme – lacks the subject-matter jurisdiction to hear the case. *Elman*, 2012 WL 6055782, at *3; *Boynton*, 2007 WL 737725, at *3-*4. Moreover, "[t]he limited circumstances under which a district court may exercise jurisdiction over an innocent spouse claim do not appear to exist here." *LeBeau*, 2012 WL 835160, at *3. Ms. Chandler does not have a Section 6015 petition pending with the Tax Court because she failed to file one in time. *Id.* The Court, therefore, does not have jurisdiction to decide an innocent spouse issue in this refund suit. *Id.*

Although Ms. Chandler and her attorney failed to file a response to the Motion to Dismiss, in analyzing the jurisdictional challenge here, the undersigned considered a decision by the Bankruptcy Court in the Southern District of Texas but concluded that it was not applicable to Ms. Chandler's case. The court in *In re Pendergraft* held that 11 U.S.C. § 505 qualifies as another "remedy provided by law," under Section 6015. *In re Pendergraft*, No. 16-33506, 2017 WL 1091935, at *6 (SD. Tex. Mar. 22, 2017); 26 U.S.C. § 6015(e)(1)(A) ("In addition to *any other remedy provided by law*, the individual may petition the Tax Court to determine the appropriate relief available to the individual under this section . . . .") (emphasis added).

Section 505 provides that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1); *see also In re Pendergraft*, 2017 WL 1091935, at *3. The court also noted that the Fifth Circuit has held that "Section 505 grants a bankruptcy court broad jurisdiction to determine the legality of any tax liability of the debtor limited only by the Section's express limitations and the bankruptcy court's discretion to abstain." *Id.* at *4; *see also In re Luongo*, 259 F.3d 323, 327 (5th Cir. 2001). But 11 U.S.C. § 505 applies only to bankruptcy courts as a means to "determine the amount or legality of any tax," and so *In re Pendergraft's* carve-out for bankruptcy courts is inapplicable to the instant case.

Since Section 505 is inapplicable here, any argument that the language "[i]n addition to any other remedy provided by law" in Section 6015(e)(1)(a) should include the ability of a district court to hear an innocent spouse relief claim instead of the Tax Court fails to persuade. 26 U.S.C. § 6015(e)(1)(A); *see In re Pendergraft*, 2017 WL 1091935, at *4.

The appropriate procedure for claiming innocent spouse relief is adequately detailed in Section 6015. *See* 26 U.S.C. § 6015. Ms. Chandler correctly filed her claim with the IRS, and it was denied by the Secretary. *See* Dkt. No. 23, Exs. 1-A to 1-B. Her next step, which was clearly provided to her in the Final Determination, was to file a

petition with the tax court within 90 days of the date of the Final Determination. *See* Dkt. No. 23, Ex. 1-B at App. 15. Ms. Chandler failed to do this.

Ms. Chandler's failure to adhere to the appropriate procedure does not create subject-matter jurisdiction for this Court.

Absent subject-matter jurisdiction, this court lacks the power to adjudicate this claim and must dismiss the action without prejudice. *See Ruiz v. Brennan*, 851 F.3d 464, 472 (5th Cir. 2017) (explaining that "dismissal without prejudice is proper when the district court dismissed for lack of subject matter jurisdiction"); *Gibson v. United States*, 809 F.3d 807, 811 (5th Cir. 2016) ("When there is no jurisdiction, the district court should dismiss the suit without prejudice so that the plaintiffs may pursue a claim in a court that has jurisdiction.").

II.   Ms. Chandler's Motion to Amend Complaint

Ms. Chandler's Motion to Amend Complaint seeks to amend her complaint to add claims under 26 U.S.C. § 6502. *See* Dkt. No. 25 at 2. Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Ms. Chandler did not amend her complaint within 21 days of service of the United States's Answer to Plaintiff's Complaint [Dkt. No. 15], and so was required to file a motion for leave to amend her complaint, *see* Dkt. No. 31 at 1-2, but she has moved to amend prior to the

deadline for a motion for leave to be filed, *see id.* at 2; Dkt. No. 25. Rule 15(a)(2) therefore governs whether she may be granted leave to amend.

The United States responds that Ms. Chandler's "proposed amendments related to 26 U.S.C. § 6502 do not save her complaint from dismissal"; that, "[u]nder the variance doctrine, Plaintiff is jurisdictionally barred from raising in a refund suit grounds for recovery which she had not previously set forth in her administrative claim for refund"; and that, "[b]ecause Plaintiff argues for the first time in this lawsuit that she is entitled to a refund under 26 U.S.C. § 6502, and she failed to include any such arguments in her administrative refund claim, the variance doctrine jurisdictionally bars inclusion of this claim in this refund suit and, therefore, any such claim must be disallowed or dismissed." Dkt. No. 33 at 1.

The United States does not suggest that the Court lacks jurisdiction to consider whether Ms. Chandler could proceed on a claim under Section 6502 even though there is no subject-matter jurisdiction in this Court over her claim under Section 6015. And that appears to be correct. *See generally 16 Front Street, L.L.C. v. Miss. Silicon, L.L.C.*, 886 F.3d 549, 554-61 (5th Cir. 2018). However, the Court should deny leave to amend where there would be no jurisdiction over Ms. Chandler's would-be Section 6502 refund claim, either. Such is the case here.

Ms. Chandler should be denied leave to amend because the Court is foreclosed by the variance doctrine from hearing the Section 6502 claim . "Absent a waiver by the Government, a taxpayer is barred from raising in a refund suit grounds for recovery which had not previously been set forth in its claim for a refund." *Mallette Bros. Const.*

*Co. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983) (citations omitted). Civil actions for tax refunds are governed by 26 U.S.C. § 7422(a), which requires that a party's claim for refund adhere to "the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a). Under these regulations, a claim must "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," and that "[a] claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." 26 C.F.R. § 301.6402-2(b)(1). Section 301.6402 codified the variance doctrine, *see El Paso CGP Co. v. United States*, 748 F.3d 225, 228 (5th Cir. 2014), which maintains that an "an alleged error must be clearly and specifically set forth in the refund claim. A generalized plea of error will not suffice." *Mallette Bros. Const. Co.*, 695 F.2d at 155. "All grounds upon which a taxpayer relies must be stated in the original claim for refund so as to apprise the Commissioner of what to look into; the Commissioner can take the claim at its face value and examine only those points to which his attention is necessarily directed. Anything not raised at that time cannot be raised later in a suit for refund." *Alabama By-Prod. Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir. 1958) (citations omitted).

Here, prior to filing the Motion to Amend Complaint, Ms. Chandler failed to ever raise her Section 6502 claim for the IRS to adjudicate, *see* Dkt. No. 23, Ex. 1-A at App.9; Ex. 1-C at App. 19; Ex 1-E at App. 26, resting her entire case on the innocent spouse relief theory under 26 U.S.C. § 6015, *see* Dkt. No. 25 at 2. The Commissioner

was not given the opportunity examine or "make an administrative determination of the claim." *Mallette Bros. Const. Co.*, 695 F.2d at 155. Moreover, on this record, no government action has constituted a waiver of such a requirement.

Since all "grounds for recovery advanced in federal court must be the same as advanced before the IRS," Ms. Chandler is barred by the variance doctrine from asserting jurisdiction over the suit for refund under Section 6502, and the Court should deny her Motion to Amend Complaint.

III.    Ms. Chandler's Motion to Change Venue and Motion for Summary Judgment

Insofar as Ms. Chandler asks the Court to transfer this action to the Wichita Falls Division of the Northern District of Texas, "[a] district court that has subject matter jurisdiction and is a proper venue may grant a transfer pursuant to § 1404(a)." *Edge Petroleum Operating Co., Inc. v. Duke Energy Trading & Marketing, L.L.C.*, 311 B.R. 740, 743 (S.D. Tex. 2003). But "[i]t is often stated that a federal court cannot transfer a case if subject matter jurisdiction does not exist." *Ray Mart, Inc. v. Stock Building Supply of Tex., LP*, 435 F. Supp. 2d 578, 584 (E.D. Tex. 2006).

Because the United States has shown that this case must be dismissed for lack of subject-matter jurisdiction, the Court cannot grant Ms. Chandler's request for a transfer of venue under Section 1404(a) or her Motion for Summary Judgment and should – as the United States urges – dismiss, not transfer, this action. *See Ratliff v. Stewart,* 508 F.3d 225, 231 (5th Cir. 2007) (noting that where "the court lacks subject matter jurisdiction," it "cannot grant summary judgment"); *John G. & Marie Stella*

*Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 674 (5th Cir. 1994) ("'Unless a federal court possesses subject matter jurisdiction over a dispute . . . any order it makes (other than an order of dismissal or remand) is void.'" (quoting *Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 568 (5th Cir. 1991)).

## Recommendation

For the reasons explained above, the Court should grant United States's Motion to Dismiss Plaintiff's Complaint for Lack of Subject-Matter Jurisdiction [Dkt. No. 23], deny Plaintiff Melody G. Chandler's Motion to Amend Complaint [Dkt. No. 25], and dismiss Plaintiff Melody G. Chandler's action without prejudice for lack of subject-matter jurisdiction, without reaching her Motion to Change Venue [Dkt. No. 25] or Motion for Summary Judgment [Dkt. No. 32].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 17, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE